IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Judith A. PINCHAR, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Judith A. PINCHAR, Respondent.

Supreme Court

*No. 02–2950–D. Decided April 10, 2003.*

2003 WI 23

(Also reported in 659 N.W.2d 26.)

¶ 1. PER CURIAM. We review the referee's recommendation that Attorney Judith A. Pinchar's license

to practice law in Wisconsin be revoked due to professional misconduct involving improper use of Attorney Pinchar's trust account. The referee also recommended that Attorney Pinchar be required to pay the costs of the proceeding.

¶ 2. We adopt the referee's findings of fact and conclusions of law and agree that the seriousness of Attorney Pinchar's professional misconduct warrants the revocation of her license to practice law in Wisconsin.

¶ 3. Attorney Pinchar was admitted to practice law in Wisconsin in 1982 and practiced in the Milwaukee area. In 1999 she consented to a private reprimand for misconduct consisting of failing either to settle a client's claim or file suit before the statute of limitations ran, failing to respond to the client's attempts to contact her, failing to inform the client that the statute of limitations had passed, and failing to respond to inquiries from Board of Attorneys Professional Responsibility[1] staff investigating the matter.

¶ 4. In November of 2000 this court imposed a 60–day suspension of Attorney Pinchar's license to practice law for failing to cooperate with the investigation of three grievances; failing to take proper steps to protect her client's interest; failing to keep a client reasonably informed about the status of a matter; engaging in dishonesty, fraud, deceit or misrepresentation; and, practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility to the Office of Lawyer Regulation.

jurisdiction. *In re Disciplinary Proceedings Against Pinchar,* 2000 WI 122, 239 Wis. 2d 269, 618 N.W.2d 869. On August 27, 2001, Attorney Pinchar's license was temporarily suspended for her willful failure to respond or cooperate with an Office of Lawyer Regulation (OLR) grievance investigation. Attorney Pinchar's license remains suspended.

¶ 5. On November 5, 2002, the OLR filed a complaint alleging that Attorney Pinchar engaged in misconduct with respect to three former clients. The first client hired Attorney Pinchar in August of 2000 to represent him in a post-divorce matter. The client gave Attorney Pinchar a check in the amount of $6326.22 for arrearages owed to the client's ex-wife. Attorney Pinchar deposited the check into her trust account on September 21, 2000. There was a balance of $3.72 in Attorney Pinchar's trust account at that time.

¶ 6. Attorney Pinchar represented to the client's ex-wife that the $6326.22 in her trust account was to fulfill all remaining amounts owed by the client and that the amount included $2239 for attorney's fees. The client's ex-wife retained an attorney to represent her in the matter. The ex-wife's attorney calculated the amount of the arrearages to be $11,845.20. On November 1, 2000, Attorney Pinchar disbursed a $1708.53 check to herself from the funds held in trust for her client, identifying the payment as attorney's fees.

¶ 7. On November 15, 2000, Attorney Pinchar deposited into her trust account an $8820.75 settlement check relating to a second client. Attorney Pinchar disbursed $7112.22 of the settlement, including a $1228.77 disbursement to Attorney Pinchar for attorney's fees. After those disbursements $1708.53 remained in the trust account from the settlement

which, consequently, replaced the $1708.53 converted on November 1, 2000, from the funds held in trust for the first client.

¶ 8. On November 29, 2000, Ameritech electronically withdrew $708 from Attorney Pinchar's trust account. The source of that payment was the funds held in trust for the first client. On December 20, 2000, Attorney Pinchar disbursed a $500 check to herself from the funds held in trust for the first client, identifying the payment as additional attorney's fees owed by the first client. On December 22, 2000, Attorney Pinchar disbursed a $1000 check to herself from the funds held in trust for the first client, without identifying the reason for the payment.

¶ 9. On May 25, 2001, Attorney Pinchar disbursed a $600 check to herself from the funds held in trust for the first client, without identifying the reason for the payment. On June 27, 2001, Attorney Pinchar disbursed a $787.50 check to the attorney for the first client's ex-wife from the funds held in trust for the first client. This check was for the first client's contribution toward his ex-wife's attorney fees.

¶ 10. On July 7, 2001, Attorney Pinchar disbursed $350 to another client, identifying the payment as a refund of a retainer fee. This refund was made from the funds held in trust for the first client. On July 16, 2001, Attorney Pinchar cashed a $100 trust account check drawn on the funds held in trust for the first client. The check was made payable to "Judith Berkowski." Judith Berkowski is Attorney Pinchar's name by marriage. On July 18, 2001, Attorney Pinchar disbursed a $440 check from the funds held in trust for the first client to the rental agent for Attorney Pinchar's office space.

¶ 11. As of July 18, 2001, Attorney Pinchar had converted $3,698 from the first client's funds. This

amount did not include the $1708.53 fee payment, which Attorney Pinchar converted and later replaced. On August 14, 2001, Attorney Pinchar deposited to the trust account a $3700 check payable to her from a relative. This deposit covered the $3698 converted from the first client's funds.

¶ 12. On August 14, 2001, Attorney Pinchar disbursed a $5539.12 check to the first client's ex-wife as a partial payment of arrearages. Without the loan from Attorney Pinchar's relative deposited into the trust account that same day, there would have been insufficient funds in the trust account to cover this disbursement. Following the disbursement there were no more funds in the trust account belonging to the first client.

¶ 13. On November 29, 2001, after her law license had been suspended, Attorney Pinchar disbursed a $1618.95 trust account check to the attorney for the first client's ex-wife in settlement of the first client's arrearages. At the time the check was written there were no funds in the account belonging to the first client.

¶ 14. On December 3, 2001, Attorney Pinchar deposited into her trust account a $50 check from the first client along with $158 from two other clients in payment of past due attorney fees. On December 4, 2001, Attorney Pinchar deposited into her trust account an $890 retainer fee and a $500 retainer fee from two different clients. Even after the deposit of those funds into the trust account the check written to the attorney for the first client's ex-wife resulted in an overdraft.

¶ 15. The OLR's complaint also alleged that Attorney Pinchar engaged in misconduct with respect to her defense of a second client who hired her to defend lawsuits filed against him by the Town of Richfield and

a former tenant. In December 2001 Attorney Pinchar informed the second client she would need $3000 to continue to cover costs associated with the Town of Richfield lawsuit. On December 4, 2001, over three months after Attorney Pinchar's license had been suspended, the second client gave Attorney Pinchar a check for $890 toward the requested retainer. The entire $890 was converted when Attorney Pinchar made the $1618.95 payment to the attorney for the first client's ex-wife.

¶ 16. The OLR's complaint also alleged that Attorney Pinchar engaged in misconduct with respect to a third client who retained her to defend him in a lawsuit related to the sale of a defective product. On November 30, 2001, Attorney Pinchar disbursed a trust account check in the amount of $300 to the attorney for the plaintiff in the lawsuit. The check was to satisfy costs associated with a motion to compel discovery. At the time the check was disbursed there were no funds in the trust account relating to the third client's matter and the balance in the trust account was $10.32. The check was presented for payment on December 5, 2001, and resulted in an overdraft.

¶ 17. Pursuant to the overdraft notification requirements of SCR 20:1.15(j),[2] Attorney Pinchar's bank reported the two overdrafts on her trust account to the OLR. On January 2, 2002, the OLR staff wrote to Attorney Pinchar at her office address requesting an

---

[2] SCR 20:1.15(j) provides:

(j) In the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, whether or not the instrument is honored, the financial institution or investment institution shall, simultaneously with the customary overdraft notice to the depositor or investor, report the overdraft to the office of lawyer regulation.

explanation for the overdrafts and the trust account activity four months after Attorney Pinchar's suspension. Attorney Pinchar was also asked to produce various trust account records. Attorney Pinchar failed to respond. On February 4, 2002, a second letter was sent to Attorney Pinchar via both first-class mail and certified mail. The certified letter was returned as unclaimed. The first-class letter was not returned to the OLR by the post office. Attorney Pinchar failed to respond to the second letter.

¶ 18. Attorney Pinchar was personally served with an authenticated copy of the OLR's order to answer and complaint. She failed to file an answer to the complaint. Attorney Lance S. Grady was appointed referee. The OLR moved for default judgment. Attorney Pinchar was given notice of the date and time of a telephone conference during which the motion for default judgment would be heard. Attempts to contact Attorney Pinchar by telephone, both at her office and home telephone numbers, were unsuccessful. The referee granted the OLR's motion for default judgment.

¶ 19. The referee filed his findings of fact, conclusions of law, and recommendation on January 13, 2003. The referee concluded that by failing to hold in trust $3698 from the first client for arrearages owed to his ex-spouse and by converting those funds for her own purposes, Attorney Pinchar failed to hold the property of clients or third persons in trust, in violation of SCR 20:1.15(a).[3] The referee also found that by converting

---

[3] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with

the first client's funds to her own use, by requesting and receiving a fee to handle the second client's case after her license to practice law was suspended, and by issuing a check to adverse counsel when there were no funds in the account related to the third client's case, Attorney Pinchar engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[4]

¶ 20. The referee also found that by depositing into her trust account a personal loan, cash to pay rent, and earned fees, Attorney Pinchar commingled personal cash and earned fees in her trust account, in

a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

violation of SCR 20:1.15(a). Finally, the referee concluded that by failing to respond to the OLR's grievance letters, Attorney Pinchar failed to provide relevant information during an investigation, in violation of SCR 22.03(6).[5]

¶ 21. The referee recommended that Attorney Pinchar's Wisconsin law license be revoked and that she be ordered to pay the costs of the disciplinary proceeding.

¶ 22. We adopt the findings of fact and conclusions of law as set forth in the referee's report and recommendation. Attorney Pinchar's misconduct with respect to the handling of her trust account and her failure to cooperate with the OLR's investigation are very serious failings warranting the revocation of her license to practice law.

¶ 23. IT IS ORDERED that the license of Attorney Judith A. Pinchar to practice law in Wisconsin is revoked, effective the date of this order.

¶ 24. IT IS FURTHER ORDERED that Attorney Judith A. Pinchar comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 25. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Judith A. Pinchar pay to the Office of Lawyer Regulation the costs of this proceeding.

[5] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."